```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

T.F. and W.M. by p/n/f
Ashley M. and Kevin M.

    v.                              Civil No. 16-cv-37-JL
                                      Opinion No. 2016 DNH 175
Spaulding Youth Center,
Colleen Sliva, Auburn School
District, School Administrative
Unit 15, and Anne McSweeney


**MEMORANDUM ORDER**


    This case implicates a school's and school district's duties to protect children from and notify parents of intra-student sexual harassment.  Ashley M. and Kevin M. brought this action on their own behalf, as well as on behalf of their minor children, T.F. and W.M., after learning that T.F. was sexually harassed by another student while attending Spaulding Youth Center as part of an agreement with the Auburn School District.[1]  The plaintiffs contend that the defendants' actions -- or inaction -- violated Title IX of the Education Amendments of

---

[1] Plaintiffs in this action have sued two sets of actors: (1) defendant Spaulding Youth Center and its Principal and Director of Special Education, Colleen Sliva (collectively "the Spaulding defendants"); and (2) Auburn School District ("Auburn"), School Administrative Unit 15 ("SAU 15"), and Anne McSweeney, Director of Student Services at the Auburn Village School (collectively "the Auburn defendants").

1972, 20 U.S.C. §§ 1681 et seq.,[2] deprived T.F. of his right to equal access to education giving rise to a claim under 42 U.S.C. § 1983, and violated duties allegedly owed by various defendants to various of the plaintiffs under several related theories of negligence.  This court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction).

 The defendants moved to dismiss several of the plaintiffs' claims.  See Fed. R. Civ. P. 12(b)(6).  The plaintiffs amended their complaint as of right in response, see Fed. R. Civ. P. 15, prompting the defendants to renew their motions to dismiss.  The plaintiffs subsequently withdrew several of their negligence[3] claims and moved to amend their complaint a second time, this time to remove the withdrawn claims and add factual allegations

---

[2] The Education Amendments of 1972 amended the Higher Education Act of 1965, the Vocational Education Act of 1963, the General Education Provisions Act, and the Elementary and Secondary Education Act of 1965.  See Education Amendments of 1972, Pub. L. No. 92-318, 86 Stat. 235 (1972).

[3] Specifically, T.F.'s negligence claim against Auburn and SAU 15 (count 8), W.M.'s negligence claims (counts 9 and 10), Ashley's and Kevin's negligence claim against Auburn and SAU (count 12), and Ashley's claims for negligent infliction of emotional distress (counts 13 and 14).  See document no. 42.  The defendants have not moved to dismiss T.F.'s Title IX claims against Spaulding, Auburn, and SAU 15 (counts 1-2), T.F.'s § 1983 claims against the Auburn defendants (counts 5-6), or T.F.'s claim for negligence against the Spaulding defendants (count 7).

in support of the plaintiffs' negligence claims against McSweeney. For the reasons discussed more fully infra Part IV, the court denies that motion.

In their First Amended Complaint, the plaintiffs assert a variety of claims, only five of which remain subject to defendants' motions to dismiss. Specifically, the various defendants move to dismiss T.F.'s § 1983 claims against the Spaulding defendants (counts 3 and 4); T.F.'s negligence claim against McSweeney (count 8); and Ashley's and Kevin's negligence claims against McSweeney and the Spaulding defendants (counts 9 and 10).[4] Having heard oral argument, the court grants the defendants' motions as to Ashley's and Kevin's negligence claims and denies them as to the rest.

I. **Applicable legal standard**

In analyzing a complaint in the Rule 12(b)(6) context, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2

---

[4] The First Amended Complaint contains two each of counts numbered 9 through 12. The plaintiffs voluntarily dismissed the other "count 9" and "count 10." To be clear, however, as a result of this order, only counts 1 through 8 remain in plaintiffs' First Amended Complaint. All other counts are dismissed, voluntarily or otherwise.

3

(1st Cir. 2010). The complaint, read in that light, must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). With the facts drawn in this manner, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).

## II. Background

This case arises from events that occurred while T.F., a minor, attended Spaulding between May 2013 and June 2015. T.F. has educational disabilities defined under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400, et seq., as autism, emotional disturbance, and "other health impaired." Prior to his arrival at Spaulding, he underwent a series of psychiatric hospitalizations after he engaged in physically aggressive and sexualized behaviors. Toward the end of May 2013, T.F.'s individualized education plan ("IEP") team determined that those behavioral issues made a residential placement appropriate for T.F., and arranged for him to enter the residential program at Spaulding. He remained in residential treatment from May 2013 until June 2014, when he transferred to the day program at Spaulding.

4

Shortly thereafter, the plaintiffs allege, T.F. began engaging in aggressive behavior at home. Though Auburn arranged for Spaulding to provide in-home services from a licensed social worker to T.F. at home for a period of time, his IEP team decided to terminate those services in November 2014.[5] During that period, T.F. continued to engage in sexualized behaviors.

While T.F. attended the day program at Spaulding, a female student there began to interact with him in a sexual manner. On March 6, 2015, T.F. described some of that behavior to staff members at Spaulding, including that the female student spoke crudely to him, had grabbed his buttocks at one time, and had stuck out her chest while saying, "I know what you are looking at," and told him to "start sucking." First Amended Compl. ¶¶ 37-38. T.F. expressed discomfort with this behavior, and told Spaulding staff that he felt uncomfortable, even frightened, around this student as a result. Id. ¶¶ 37-39.

T.F. continued to report encounters with this student to various Spaulding staff members between March 6 and May 27, 2015. According to T.F., the student attempted to hug him, remain near him, "ma[de] comments to him," breathed heavily and

---

[5] Thereafter, and for the duration of the period relevant to this action, Auburn provided an hour per week of services with a behavioral analyst.

panted near the back of his neck as she walked past him, followed him around, and "creep[ed] him out." Id. ¶¶ 40-46. More than once, he expressed fear at the idea of attending school because of this activity and concern that the staff failed to acknowledge the student's behavior and did nothing to intervene. Id. ¶¶ 39-42.

In this timeframe, T.F.'s IEP team met at least thrice to discuss his progress and future placement. Id. ¶¶ 43, 45, 47. At a meeting on March 20, 2015, the team determined that he no longer required a placement at Spaulding and that another educational venue would suit his needs for the 2016-2017 schoolyear. Id. ¶¶ 43. The plaintiffs allege that the team did not discuss the female student's behavior toward T.F. at any of those meetings, id. ¶¶ 43, 45, 47, and did not notify T.F.'s parents of those incidents, id. ¶¶ 43, 45. The plaintiffs further allege that the report provided to Auburn and T.F.'s parents upon his discharge from Spaulding on June 26, 2015, lacked any mention of the female student's behavior toward T.F. or his discussions of those incidents with his counselor. Id. ¶ 48.

On September 30, 2015, several months later and after T.F. began the 2016-2017 school year at a new school, Ashley discovered that T.F. had sexually assaulted his younger sister,

6

W.M. on at least one occasion.  T.F. was hospitalized and, upon his release in October, went to live with his grandparents in another state.  Only in late October 2015, after Ashley requested T.F.'s records from Spaulding, the plaintiffs allege, did she and Kevin receive notice from the school about the incidents between T.F. and the female student.  Ashley forwarded T.F.'s records to the New Hampshire Department of Children, Youth, and Families.  DCYF opened an investigation and interviewed T.F., who disclosed that the female student sexually assaulted him at Spaulding.  See id. ¶¶ 69-70.

Auburn conducted a psycho-sexual evaluation of T.F.  On the basis of that examination, Ashley and Kevin unilaterally placed T.F. in a residential school that specializes in educating students who have engaged in sexualized behaviors.  The plaintiffs then filed this action on April 22, 2016, seeking to recover from the Auburn and Spaulding defendants for violations of Title IX, a deprivation of rights under § 1983, and common law negligence.  The plaintiffs have withdrawn certain of their claims, as discussed supra, and the defendants have moved to dismiss the plaintiffs' § 1983 claims against the Spaulding defendants and three of the plaintiffs' negligence claims.

## III. **Analysis**

The defendants have moved to dismiss negligence claims brought on behalf of plaintiffs Ashley and Kevin against the Spaulding defendants and McSweeney.[6] Plaintiffs base these claims on those defendants' alleged failure to inform them of the harassment T.F. endured at Spaulding. Had the defendants so notified them, they would have been able to act as the children's parents to protect both T.F. and W.M. The lack of such a warning prevented them from taking action and, as a result, Ashley and Kevin allege that "they suffered and will continue to suffer severe emotional distress because they had to observe the physical, physiological and psychological deterioration of" their children. First Amended Compl. ¶¶ 193-194, 211-212.

To satisfy the familiar elements of a negligence claim,[7] the plaintiff must "establish that the defendant owed a duty to the

---

[6] Minor plaintiff T.F.'s separate claims for negligence against these defendants remain unchallenged.

[7] The defendants argue that Ashley and Kevin, by pleading only emotional distress damages, seek recovery for negligent infliction of emotional distress rather than traditional negligence. See Auburn Mot. to Dismiss (document no. 17-1) at 13-15; Spaulding Mot. to Dismiss (document no. 15-1) at 9-11. Though the line is somewhat blurred, New Hampshire law appears to contemplate that plaintiffs can "recover for emotional distress under a traditional negligence theory," though they must "demonstrate physical symptoms of their distress" to do so. O'Donnell v. HCA Health Servs. of New Hampshire, Inc., 152 N.H.

plaintiff, breached that duty, and that the breach proximately caused the claimed injury." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003) (quotations and citations omitted).  The defendants take aim at the first element, arguing that the plaintiffs have failed to allege that the Spaulding defendants and McSweeney owed any cognizable legal duty to T.F.'s parents, as opposed to T.F. himself.  "Absent a duty, there is no negligence." Walls v. Oxford Mgmt. Co., 137 N.H. 653, 656 (1993).  The plaintiffs counter that the defendants owed a duty -- not only to T.F. himself, but to his parents -- to inform them of harassment T.F. endured at school.

"Whether a duty exists in a particular case is a question of law." Walls, 137 N.H. at 656.  "As a general rule, a person has no affirmative duty to aid or protect another," though "[s]uch a duty may arise . . . if a special relationship exists." Marquay v. Eno, 139 N.H. 708, 716 (1995).  Relevant to the plaintiffs' claims here, New Hampshire recognizes that "[s]chools share a special relationship with students entrusted

---

608, 611 (2005).  As the plaintiffs have disavowed any claim for negligent infliction of emotional distress by Ashley or Kevin, the court considers their claims as brought under traditional negligence theory.  See Obj. to Spaulding Mot. to Dismiss (document no. 21-1) at 14; Obj. to  Auburn Mot. to Dismiss (document no. 22-1) at 16; Notice of Voluntary Withdrawal (document no. 42).

to their care, which imposes upon them certain duties of reasonable supervision." Id. at 717.  The duty of "those school employees who have supervisory responsibility over students" to supervise those students flows from the idea that mandatory "[s]chool attendance impairs both the ability of students to protect themselves and the ability of their parents to protect them." Id.

The plaintiffs argue that by grounding the school's duty of supervision in the school's in loco parentis status, the New Hampshire Supreme Court has "opened the door" for recognition of "a duty to warn or notify parents of issues concerning their children at school."  Obj. to Spaulding Mot. to Dismiss (document no. 21-1) at 13.  Plaintiffs note several decisions from other jurisdictions recognizing such a duty.  See, e.g., Phyllis v. Superior Court, 183 Cal. App. 3d 1193, 1196 (1996); Parents No. 1 v. State Dep't of Educ., 100 Haw. 34 (2002) (recognizing "special relationship" between school and student's parents).

This court, which has its own duty under these circumstances "to predict how [the New Hampshire Supreme Court] would likely decide the question," Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013), does not share the plaintiffs' view. Since recognizing "that a special relationship exists between

10

schools and the students in their care so as to impose upon schools 'certain duties of reasonable supervision,'" Gauthier v. Manchester Sch. Dist., 168 N.H. 143, 149 (2015) (quoting Marquay, 139 N.H. at 717), the New Hampshire Supreme Court has carefully circumscribed that duty, limiting it "to only those periods of time when parental protection is compromised, and only to those risks that are reasonably foreseeable." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 731 (2009) (finding school had no duty to prevent student's suicide). Particularly relevant to these claims, it has declined to recognize this special relationship as extending so far as to invest in the school a duty -- owed to the student -- to report incidents of bullying to the bullied student's parent. Gauthier, 168 N.H. at 149.

 To the extent that this line of cases has indeed opened a door -- and this court is skeptical that it has, in light of Mikell and Gauthier -- it would appear to be a door leading to recognition that the school owed a duty to the student to inform the parents of events occurring while the student was in the school's custody, not a duty owed to the parents to do the same. Such a duty must still be grounded in a "special relationship" between the parties, and the only "special relationship" that New Hampshire law recognizes in this context is that between the

11

school and the student.  See Gauthier, 168 N.H. 148-49.  Insofar as the New Hampshire Supreme Court has declined to recognize a school's duty to a student to notify parents of instances of bullying despite recognizing a special relationship between schools and students, see id., it seems unlikely that the Court would recognize such a duty owed to the parents when it has not recognized a special relationship between schools and students' parents.

Having concluded that the absence of a legally cognizable duty owed by the Spaulding defendants or McSweeney to Ashley and Kevin precludes recovery under a negligence theory, the court grants the various defendants' motions to dismiss Ashley and Kevin's negligence claims (counts 11 and 12).  The court declines, however, to dismiss T.F.'s § 1983 claims against the Spaulding defendants or T.F.'s negligence claim against McSweeney at this time.  These fact-specific inquiries are better resolved in a different procedural context.[8]

### IV. Plaintiffs' motion to amend the complaint

As discussed supra, during the pendency of defendants' motions to dismiss several counts of the plaintiffs' First Amended Complaint, the plaintiffs moved to amend their complaint

---

[8] See, e.g., Fed. R. Civ. P. 56; id. Rule 50.

a second time.  The court's order of May 25, 2016 set a June 1, 2016 deadline for plaintiffs to amend their complaint.  See document no. 11 at 5; document no. 26.  Where, as here, the court has issued a scheduling order, the court evaluates the plaintiffs' request to amend its complaint outside of the deadline set by that order under the Rule 16 "good cause" standard.[9]  Fed. R. Civ. P. 16(b)(4); United States ex rel D'Agostino v. EV3, Inc., 802 F.3d 188, 192-93 (1st. Cir. 2015).  "This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent."  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).

The plaintiffs propose amendments to the complaint that, they suggest, would bolster their negligence claims against McSweeney.  See Mot. to Amend Complaint (document no. 43) at 1.  The Auburn defendants concede, however, that the plaintiffs' First Amended Complaint contains the allegation that McSweeney acted in bad faith and that the plaintiffs can use evidence, newly-acquired in discovery, in an effort to prove that

---

[9] Not, as the plaintiffs and Spaulding defendants suggest, under Rule 15's requirement that courts should "freely give leave when justice so requires."  See Mot. to Amend Complaint (document no. 43-1) at 6; Spaulding Defs. Obj. to Mot. to Amend (document no. 45) at 1-2.

allegation regardless of whether those facts are recited in the complaint.  See Auburn Defs. Obj. to Mot. to Amend (document no. 46-1) at 8-9.  As discussed supra Part III, the court denies the Auburn defendants' motion to dismiss T.F.'s negligence claim against McSweeney.  None of the newly alleged facts would alter the court's conclusion that New Hampshire law does not, at this time, recognize that the school district owed a duty to T.F.'s parents to notify them of his harassment complaints. Accordingly, plaintiffs' motion to amend their complaint is denied as futile and for failure to demonstrate good cause.

## V.  Conclusion

For the reasons set forth above, the defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  Specifically, the Spaulding defendants' motion[10] is DENIED as to the plaintiffs' § 1983 claims (counts 3 and 4) and GRANTED as to Ashley's and Kevin's negligence claim (count 9).  The Auburn defendants' motion[11] is DENIED as to T.F.'s negligence claim against McSweeney (count 8) and GRANTED as to Ashley's and Kevin's negligence claim (count 10).

---

[10] Document no. 15.

[11] Document no. 17.

The plaintiffs' motion for leave to file a second amended complaint[12] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 29, 2016

cc: Karen E. Hewes, Esq.
    Courtney H.G. Herz, Esq.
    Megan C. Carrier, Esq.
    Dona Feeney, Esq.

---

[12] Document no. 43.

15